MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: mrlozeau@lozeaulaw.com

ANDREW L. PACKARD (State Bar No. 168690)
MICHAEL P. LYNES (State Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

FRED BLUM (State Bar No. 101586)
JOSEPH ADAMS (State Bar No. 194964)
Bassi Martini Edlin & Blum
351 California Street, Suite 200
San Francisco, CA 94104
Tel: (415) 397-9006
E-mail: fblum@bmeblaw.com

Attorneys for Defendant
CONTRA COSTA WASTE SERVICE RECYCLING CENTER AND TRANSFER STATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>CONTRA COSTA WASTE SERVICE RECYCLING CENTER AND TRANSFER STATION, a corporation.<br><br>           Defendant. | Case No. 3:07-cv-04484-BZ<br><br>**DECLARATION OF DOUGLAS J. CHERMAK IN SUPPORT OF STIPULATED REQUEST TO EXTEND THE EXISTING CASE SCHEDULE** |

1

Declaration of Douglas J. Chermak                                                   CASE NO. 3:07-cv-04484-BZ

I, Douglas J. Chermak, declare as follows:

1. I am an attorney at law duly admitted to practice before all of the courts of the State of California and an attorney of record for Plaintiff California Sportfishing Protection Alliance. I have personal knowledge of all matters stated herein and, if called as a witness, could and would testify competently thereto.

2. Attached hereto as Exhibit A is a true and correct copy of a Settlement Agreement and Mutual Release of Claims ("Settlement"), not including the referenced exhibits, entered into by the parties in the above-captioned matter.

3. On December 21, 2007, I arranged for copies of the Settlement to be sent via Certified Mail Return Receipt Requested, to the United States Environmental Protection Agency ("EPA") and the United States Department of Justice ("DOJ"). A true and correct copy of the cover letter sent to the agencies is attached hereto as Exhibit B.

4. Prior to the parties requesting the Court to enter a dismissal in this action, including a request that the Court maintain jurisdiction over any enforcement issues arising under the Settlement, the two federal agencies – EPA and DOJ – are entitled to a 45-day review period pursuant to Section 505(c)(3) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(c)(3). The Settlement commits Plaintiff to file a joint request for dismissal within 10-days of the last day of the agencies' 45-day review period. Exhibit A, ¶ 2.

5. By extending the current case management conference for a period of about 70 days would allow the parties to complete their resolution of the case by filing the agreed upon dismissal subsequent to the mandatory agency review and would avoid unnecessary expenditures by the parties and the Court to further process a case that has been settled by the parties and very unlikely to proceed subsequent to the agency's review and the Court's consideration of the Settlement and dismissal request.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on December 21, 2007 at Alameda, California.

                                                             /s/ *Douglas J. Chermak*
                                                             Douglas J. Chermak

2

Declaration of Douglas J. Chermak                                                   CASE NO. 3:07-cv-04484-BZ

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and Contra Costa Waste Service Recycling Center and Transfer Station ("CCWS") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Francisco Bay, Suisun Bay, and other California waters;

**WHEREAS**, CCWS is a corporation organized under the laws of the State of California that owns and operates a recycling center and transfer station at 1300 Loveridge Road, Pittsburg, California (the "Facility") pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit"). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on May 18, 2007, CSPA provided CCWS a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on August 29, 2007, CSPA filed its Complaint in the United States District Court for the Northern District of California against CCWS (*California Sportfishing Protection Alliance v. Contra Costa Waste Service Recycling Center and Transfer Station,* Case No. 3:07-cv-04484-BZ). A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, CCWS denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, CSPA and CCWS, through their authorized representatives and without either adjudication of CSPA's claims or admission by CCWS of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and CCWS have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and CCWS hereby agree as follows:

### EFFECTIVE DATE

1.      The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

### COMMITMENTS OF CSPA

2.      **Stipulation to Dismiss and [Proposed] Order.**  Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 18 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint.  Consistent with Paragraphs 12, 25 and 26 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 15, 2010 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT.  If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

### COMMITMENTS OF CCWS

3.      **Compliance with General Permit.**  CCWS agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4.      **MITIGATION PAYMENT**.  In recognition of the good-faith efforts by CCWS to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by CCWS of any penalties, which may have been assessed in this action if it had proceeded to trial, CCWS agrees to pay the sum of thirty five thousand dollars ($35,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects within the San Francisco Bay-Delta Estuary, relating to water quality improvements in the area.  Payment shall be made by CCWS within fifteen (15) calendar days of the District Court's entry of the Order described in Paragraph 2 of this AGREEMENT.  Payment by CCWS shall be made in the form of a single check payable to the "Rose Foundation."

5.      **Implemented Storm Water Controls**.  CCWS shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including, but not limited to, existing housekeeping measures.

6.      **Additional Protection of Drains.**  CCWS shall take the following actions to improve the storm water pollution prevention measures at the drop inlets and outfall at the Facility.

> a.      By December 1, 2007, CCWS shall construct and install a broad, shallow swale filled with woodchips immediately upgradient from the drop inlet located in the Northern unpaved area of the Facility.  The swale shall be appropriately sized to handle storm events of up to 25 year, 24-hour storm event in size and to maximize the settling out of solids from storm water passing through the swale.  The woodchip filters shall be secured with an appropriately sized mesh screen to prevent dislodging of woodchips during storm events.  CCWS shall construct a depressed collection area filled with gravel and cobbles immediately in front of the drop inlet designed to reduce TSS levels in storm water flowing through that area.

    b.    By December 1, 2007, CCWS shall install filters on all fourteen ("14") drop inlets. CCWS shall use 24" by 24" FloGard+ filters manufactured by Kristar Enterprises. Each filter shall be replaced or maintained as needed.

    c.    By December 1, 2007, CCWS shall secure the straw waddle surrounding the drop inlet in the northwestern part of the Facility. The method of securing the waddle shall be maintained as needed to ensure that the straw waddle remains in place.

    d.    By December 1, 2007, CCWS shall regrade the southwestern and southeastern yards of the Facility, including the southeast corner adjacent to the entrance, to achieve a positive flow of storm water towards the swale and catchment described in paragraph 6.a in the Northern unpaved area of the Facility. The regrading shall be implemented to create an effective berm preventing any storm water from flowing off of the southern portion of the Facility.

    e.    By June 1, 2008, CCWS shall design and install removable metal covers for all drop inlets at the Facility. The covers shall be placed over all drop inlets on June 1 at the end of each rainy season, subsequent to appropriate cleaning of the filters described above. The covers shall be removed prior to the first rain event of the subsequent rainy season. The covers shall be fitted to ensure that no materials may enter the drop inlets and designed such that the covers will remain firmly in place while there is normal activity at the Facility.

7.    **Increased Housekeeping Measures.**  CCWS shall institute the following accelerated pavement cleaning schedule at the facility:

    a.    On each day that it is open and staffed, CCWS shall conduct daily, year-round, manual sweepings of key material transfer areas and of areas with significant visible accumulation of sediment or debris.

      b.      On each day that it is opened and staffed, CCWS shall conduct daily, mechanical sweeping of the entire Facility with a Tenet sweeper for no less than sixteen ("16") hours per day.

      c.      All sweeping activities performed at the Facility shall be recorded in a sweeping log and a sample blank log form will be included in the Facility's Annual Report and the Storm Water Pollution Prevention Plan.

      d.      During the rainy season, CCWS shall monitor the clarifiers on a weekly basis. During the rainy season, the clarifiers shall be cleaned out as necessary to ensure their proper operation, but in no case shall they be cleaned less than monthly. During the dry season, the clarifiers will be cleaned out as necessary to ensure their proper operation, but in no case shall they be cleaned less than quarterly.

8.    **Monitoring**. CCWS agrees to perform the monitoring described herein during the 2007-2008, 2008-2009, and 2009-2010 rainy seasons in addition to the minimum monitoring requirements of the General Permit.

      a.      CCWS shall sample and analyze storm water discharges from all storm water discharge locations during four storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. In the event there are exceedences during any one or more of the four sampling events, to determine the source of any exceedances, CCWS shall also sample and analyze water samples from each of the three ("3) clarifiers for four storm events. CCWS shall analyze each sample for total suspended solids, pH, oil and grease, electrical conductivity, and total organic carbon.

      b.      For each significant rain event occurring during the 2007-2008, 2008-2009, or 2009-2010 rainy seasons that results in any discharge from the Facility during regularly scheduled operating hours, CCWS shall conduct visual observations of all known and suspected storm water discharge

      locations, including the entire perimeter of the Facility. CCWS shall maintain a log describing all observations of conditions relating to the management of storm water at the Facility.

c.     During each of its monthly wet weather storm inspections required by the General Permit, CCWS shall take representative photographs of discharges from the Facility's entrance, main outfall, any other location where storm water is being released, and the swale and catchment basin in the Northern unpaved area of the Facility.

d.     During each of its monthly wet weather storm inspections required by the General Permit, CCWS shall make visual observations of all filters installed in the drop inlets. CCWS shall replace any filters as needed.

e.     All maintenance, repair, and replacement activities relating to the Facility's storm water management program shall be recorded and described on appropriate log books or sheets. Such logs shall include, but not be limited to, information showing the date, time, place, person responsible and a brief description of all repairs, replacements, or maintenance, and include photographs. Sample logsheets shall be included in the Facility's SWPPP. Completed logs for each rainy season shall be included as part of the Facility's Annual Report submitted to the Regional Water Quality Control Board ("Regional Board").

f.     CCWS shall implement a program for monitoring and cleaning up oil and grease that may be deposited on the site from the trucks that regularly enter the premises. CCSW will conduct daily visual monitoring of areas where trucks and other vehicles travel within the Facility. Any spills observed will be immediately cleaned and treated. A description of all oil and grease monitoring and cleaning performed at the Facility shall be recorded in an oil monitoring log and a sample blank log form will be

      included in the Facility's Annual Report and the Storm Water Pollution Prevention Plan.

  g. All photographs required by this Settlement Agreement shall be in color and electronically formatted.  Each photograph shall be identified by date, the person taking the photograph and the location of the Facility being photographed.  The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and an abbreviation identifying the location of the photographed area.  Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via compact disc(s), or electronically via e-mail.

9. **Monitoring Results.**  Results from CCWS's sampling and analysis during the term of this AGREEMENT shall be provided to CSPA within 30 days of receipt of the sampling results by CCWS or its counsel.

10. **Meet and Confer Regarding Exceedence of Levels of Potential Concern.**  If analytical results of storm water samples taken by CCWS during the 2007-2008, 2008-2009 and/or the 2009-2010 rainy season indicate that storm water discharges from the Facility exceed the following Levels of Concern – Total Suspended Solids: 100 mg/L; Specific Conductance: 200 µmhos/cm;  Oil & Grease: 15 mg/L;  pH: 6.0-9.0 s.u.; or Total Organic Carbon: 110 mg/L – CCWS agrees to take additional feasible measures aimed at reducing pollutants in the Facility's storm water to levels at or below these Levels.

 In furtherance of that objective, CCWS shall prepare a written statement ("Memorandum") discussing:

  (1) any exceedence or exceedences;

  (2) an explanation of the possible cause(s) and/or source(s) of any exceedence; and

  (3) additional feasible Best Management Practices ("BMP") that will be taken to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 1st following the conclusion of each rainy season.

11. Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than 21 days from the due date of the Memorandum, except where 1) structural changes require longer than 21 days to complete 2) weather-related conditions render immediate implementation infeasible; or 3) the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with paragraph 12. Within thirty (30) days of implementation, CCWS' SWPPP shall be amended to include all additional BMP measures implemented pursuant to the Memorandum.

12. Upon receipt of the Memorandum, CSPA may review and comment on any additional measures. If requested by CSPA within 21 days of receipt of such Memorandum, CSPA and CCWS shall meet and confer and conduct a site inspection within 60-days after the due date of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Levels of Concern. If within 21-days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge or Judge assigned to this action pursuant to Paragraphs 25 and 26 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion consistent with Paragraphs 25 and 26 below.

13. Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures implemented by CCWS shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria or any Level of Concern.

14. In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, CCWS shall permit representatives of CSPA to perform one (1) additional site visit per rainy season to the Facility during normal daylight business hours

during the term of this AGREEMENT; provided that CSPA provides CCWS via e-mail with at least two-days prior written notice.

15.     **Provision of Documents and Reports.**  During the life of this AGREEMENT, CCWS shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit.  Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency.  CCWS also shall provide CSPA a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within 7 days of a written request (via e-mail or regular mail) by CSPA.

16.     **Amendment of SWPPP.**  Within sixty (60) days of the Effective Date of this AGREEMENT, CCWS shall amend the Facility's Storm Water Pollution Prevention Plan ("SWPPP") to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT.  A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

17.     **Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, CCWS shall pay CSPA the sum of twenty-six thousand dollars ($26,000.00).  Payment shall be made by CCWS within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by CCWS to CSPA shall be made in the form of a single check payable to "Law Office of Michael R. Lozeau Attorney Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.

18.     **Compliance Oversight Costs**:  As reimbursement for CSPA's future costs that will be incurred in order for CSPA to monitor CCWS' compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, CCWS agrees to

reimburse CSPA for costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding five thousand dollars ($5,000.00) per rainy season.  Costs reimbursable pursuant to this paragraph may include, but are not limited to, costs by CSPA or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of CCWS concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling.  Up to three annual payments (one addressing any monitoring associated with the 2007-2008 rainy season, one addressing monitoring associated with the 2008-2009 rainy season, and one addressing monitoring associated with the 2009-2010 rainy season ) shall be made payable to Michael R. Lozeau Attorney-Client Trust Account within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months.

     19.    **Review by Federal Agencies.**  CSPA shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five  (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to CCWS upon receipt by CSPA.  In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and CCWS agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If CSPA and CCWS are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and CCWS agree to expeditiously seek a settlement conference with the Magistrate Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

     20.    Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or

regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

21.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

22.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

23.     For the period beginning on the Effective Date and ending on December 15, 2010, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against CCWS seeking relief for alleged violations of the Clean Water Act or violations of the General Permit.  CSPA further agrees that, beginning on the Effective Date and ending on December 15, 2010, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against CCWS that

may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge CCWS's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

24.     This AGREEMENT shall terminate on December 15, 2010.

## DISPUTE RESOLUTION PROCEDURES

25.     Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT or in any 21-Day Memorandum delivered pursuant to Paragraphs 10-12 herein, ("Disputed Issue") shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any Disputed Issue arising under this AGREEMENT.  In the event that such Disputed Issue cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action.  In the event that the SETTLING PARTIES cannot resolve the Disputed Issue by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the Disputed Issue via motion to the Judge assigned to this action.  The SETTLING PARTIES may also agree to submit the motion to the Magistrate Judge.

26.     In resolving any dispute arising from this AGREEMENT, the Magistrate Judge and/or Judge shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any Disputed Issues.  The SETTLING PARTIES expressly acknowledge and agree that the Magistrate's and Judge's discretion in awarding attorney's fees shall consider the reasonableness and good faith of the SETTLING PARTIES with respect to any Disputed Issue. The SETTLING PARTIES agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference.

## BREACH OF SETTLEMENT AGREEMENT

27.     **Impossibility of Performance.**  Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance.  The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established.  In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

28.     **Construction.**  The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

29.     **Interpretation.**  This AGREEMENT was jointly drafted by the SETTLING PARTIES, by and through their attorneys of record.  The SETTLING PARTIES agree that they have each consulted their respective attorneys and clearly understand the terms herein.  Accordingly, and based on said joint drafting of this AGREEMENT, this AGREEMENT shall not be interpreted or construed against any party on the grounds that said party is the drafting party.

30.     **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

31.     **Severability.**  In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

32. **Correspondence.**  All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA  95204
Tel: (209) 464-5067
deltakeep@aol.com

And to:

Michael R. Lozeau
Douglas J. Chermak
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel:  (510) 749-9102
mrlozeau@lozeaulaw.com
djchermak@lozeaulaw.com

If to CCWS:

Silvio Garaventa, Jr.
Contra Costa Waste Service
P.O.Box 5397
Concord, CA 94520
Tel: (925) 682-7492
Sil@GaraventaEnt.com

And to:

Fred Blum
Joseph B. Adams
Bassi, Martini, Edlin & Blum
351 California Street, Suite 200
San Francisco, CA  94104
415-403-4404
fblum@bmeblaw.com
jadams@bmeblaw.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

33. **Counterparts.**  This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

34. **Assignment**.  Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

35. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

36. **Full Settlement.**  This AGREEMENT constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

37. **Integration Clause.**  This is an integrated AGREEMENT.  This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

38. **Authority.**  The undersigned representatives for CSPA and CCWS each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: 12/20/2007

Contra Costa Waste Service Recycling Center & Transfer Station

By: Silvio Garaventa, Jr.
Title: Owner

Date: 14 December 2007

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

APPROVED AS TO FORM:

Date: 12/21/2007

For DEFENDANT
BASSI, MARTINI, EDLIN & BLUM

By: Joseph B. Adams, Esq.

Date: December 14, 2007

For PLAINTIFF
LAW OFFICE OF MICHAEL LOZEAU

By: Douglas J. Chermak, Esq.

LAW OFFICE OF
MICHAEL R. LOZEAU
1516 OAK STREET, SUITE 216
ALAMEDA, CALIFORNIA 94501

mrlozeau@lozeaulaw.com
TEL: (510) 749-9102
FAX: (510) 749-9103

December 21, 2007

*Via certified mail / Return receipt requested*

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Attorney General
U.S. Department of Justice
Citizen Suit Coordinator
Room 2615
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Re: California Sportfishing Protection Alliance v. Contra Costa Waste Service Recycling Center and Transfer Station,
Case No. 3:07-cv-04484 – Settlement Agreement; 45-day review

Dear Citizen Suit Coordinators,

On December 21, 2007, the parties in the above-captioned case agreed to enter into a settlement agreement setting forth mutually agreeable settlement terms to resolve the matter in its entirety. Pursuant to the terms of the settlement agreement and 40 C.F.R. § 135.5, the enclosed settlement agreement is being submitted to the United States Environmental Protection Agency and the U.S. Department of Justice for a 45-day review period. If you have any questions regarding the settlement agreement, please feel free to contact me or counsel for Defendant listed below. Thank you for your attention to this matter.

Sincerely,

Douglas J. Chermak
Attorney for Plaintiff California Sportfishing Protection Alliance

cc via First Class Mail:  Wayne Nastri, Regional Administrator, EPA Region 9
cc via e-mail:  Joe Adams, Bassi, Martini, Edlin & Blum
Counsel for Defendant (Tel. 415-403-4404)
Andrew Packard, Counsel for Plaintiff
Laurie Kermish, EPA Region 9

Encls.